NORTHCUTT, Judge,
Concurring.
Although I appreciate my colleagues’ efforts to assign discrete ambits to these two statutes, I am not convinced that it is possible to do so. I have difficulty imagining that one could reasonably think it necessary to use deadly force to prevent death or great bodily harm without believing that the threatened harm is imminent. For purposes of this case, however, I don’t think it is necessary to parse the language of the two statutes in an effort to harmonize them. The State’s assertion that the conditions contained in section 776.013(3) should be engrafted onto the right of self-defense set forth in section 776.012 must fail for other important reasons.
The first is the language of section 776.012. As amended by the Stand Your Ground legislation, it plainly and simply provides that “a person is justified in the use of deadly force and does not have a duty to retreat” if:
(1) He or she reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony; or
(2) Under those circumstances permitted pursuant to s. 776.013.
(Emphasis added.) The legislature’s use of the disjunctive “or” clearly means that either of the listed circumstances justify the use of deadly force. Thus, whatever we may or may not think about the existence of meaningful distinctions between the statutes, we cannot doubt that the legislature intended them to be independent justifications for the use of deadly force. This is also apparent in section 776.032, which immunizes from prosecution “[a] person who uses force as permitted in s. 776.012, s. 776.013, or 776.031[.]” (emphasis added). To conflate the requirements of sections 776.012 and 776.013(3), as the State urges us to do, would require us to disregard the plain language of the statutes.
Further, accepting the State’s position would violate our legal duty to construe the statutory language strictly. That obligation is expressly set forth in section 775.021(1), which commands that the provisions of the Criminal Code “shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.” The statute requires a strict construction in favor of the accused even when a reasonable contrary meaning can be found by application of traditional statutory construction principles. See, e.g., Kasischke v. State, 991 So.2d 803 (Fla.2008); Polite v. State, 973 So.2d 1107 (Fla.2007); State v. Huggins, 802 So.2d 276 (Fla.2001); Perkins v. State, 576 So.2d 1310 (Fla.1991).
Section 775.021 is a codification of the common law rule of lenity, the foundation of which is the due process requirement that “criminal statutes must say with some precision exactly what is prohibited.” Perkins, 576 So.2d at 1312.
Indeed, our system of jurisprudence is founded on a belief that everyone must be given sufficient notice of those matters that may result in a deprivation of life, liberty, or property. For this reason,
[a] penal statute must be written in language sufficiently definite, when *224 measured by common understanding and practice, to apprise ordinary persons of common intelligence of what conduct will render them liable to be prosecuted for its violation.
Gluesenkamp v. State, 391 So.2d 192, 198 (Fla.1980), cert. denied, 454 U.S. 818, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981) (citations omitted).
Id. (citations omitted). If we were to hold that the provisions of section 776.013(3) were always necessary elements of a self-defense under section 776.012, then the latter statute would be worse than confusing; insofar as it presents itself as a separate, independent basis for the defense, it would be affirmatively misleading.
Finally, it seems to me that the State could not prevail in this case even if we were to read the provisions of section 776.013 into section 776.012. The reason is that section 776.013 does not, by its terms, preclude persons engaged in unlawful activities — or anyone else, for that matter— from using deadly force in self-defense. Rather, the statute merely states that one who is not engaged in unlawful activity may use deadly force to defend himself or herself if he or she reasonably believes it necessary to prevent death, great bodily harm, or the commission of a forcible felony. The State would have us interpret this language as impliedly restricting the right to use deadly force to those who are not engaged in unlawful activity.
But such an alteration to the common law could only be made in a statute that explicitly sets forth that intention. Nell v. State, 277 So.2d 1 (Fla.1973). “Unless a statute unequivocally states that it changes the common law, or is so repugnant to the common law that the two cannot coexist, the statute will not be held to have changed the common law.” State v. Ashley, 701 So.2d 338, 341 (Fla.1997) (quoting Thornber v. City of Fort Walton Beach, 568 So.2d 914, 918 (Fla.1990)).
Section 776.013 does not expressly alter the common law, and its provisions are not repugnant to the common law; to the contrary, they are fully consistent with it. And, as mentioned, the legislature has elsewhere provided for the use of deadly force without these limitations; it has specified that the other statute is a separate and independent basis therefor; and it has directed us to construe these statutes strictly and to resolve ambiguities in favor the accused. Given all of this, we cannot infer the departure from the common law that the State advocates.
APPENDIX A
776.013. Home protection; use of deadly force; presumption of fear of death or great bodily harm.—
(1) A person is presumed to have held a reasonable fear of imminent peril of death or great bodily harm to himself or herself or another when using defensive force that is intended or likely to cause death or great bodily harm to another if:
(a) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a dwelling, residence, or occupied vehicle, or if that person had removed or was attempting to remove another against that person’s will from the dwelling, residence, or occupied vehicle; and
(b) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.
(2) The presumption set forth in subsection (1) does not apply if:
(a) The person against whom the defensive force is used has the right to be in or *225 is a lawful resident of the dwelling, residence, or vehicle, such as an owner, lessee, or titleholder, and there is not an injunction for protection from domestic violence or a written pretrial supervision order of no contact against that person; or
(b)The person or persons sought to be removed is a child or grandchild, or is otherwise in the lawful custody or under the lawful guardianship of, the person against whom the defensive force is used; or
(c) The person who uses defensive force is engaged in an unlawful activity or is using the dwelling, residence, or occupied vehicle to further an unlawful activity; or
(d) The person against whom the defensive force is used is a law enforcement officer, as defined in s. 943.10(14), who enters or attempts to enter a dwelling, residence, or vehicle in the performance of his or her official duties and the officer identified himself or herself in accordance with any applicable law or the person using force knew or reasonably should have known that the person entering or attempting to enter was a law enforcement officer.
(3) A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.
(4) A person who unlawfully and by force enters or attempts to enter a person’s dwelling, residence, or occupied vehicle is presumed to be doing so with the intent to commit an unlawful act involving force or violence.
(5)As used in this section, the term:
(a) “Dwelling” means a building or conveyance of any kind, including any attached porch, whether the building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it, including a tent, and is designed to be occupied by people lodging therein at night.
(b) “Residence” means a dwelling in which a person resides either temporarily or permanently or is visiting as an invited guest.
(c) “Vehicle” means a conveyance of any kind, whether or not motorized, which is designed to transport people or property.